## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **WAVERLY GARDENS OF MEMPHIS, LLC,** | ) | **Case No. 08-30218-PJD** |
| | ) | |
| **KIRBY OAKS INTEGRA, LLC, d/b/a WAVERLY GLEN,** | ) | **Case No. 08-30221-PJD** |
| | ) | **Chapter 11** |
| Debtors. | ) | **Jointly Administered** |

_____

**FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR WAVERLY GARDENS OF MEMPHIS, LLC AND KIRBY OAKS INTEGRA, LLC, d/b/a WAVERLY GLEN PROPOSED BY THE DEBTORS AND FIRST TENNESSEE BANK NATIONAL ASSOCIATION**

_____

### (Dated: May 19, 2010)

Waverly Gardens of Memphis, LLC and Kirby Oaks Integra, LLC (collectively "Debtors") and First Tennessee Bank National Association ("First Tennessee") (collectively the "Plan Proponents") proposes the following First Amended Joint Plan of Reorganization for Waverly Gardens of Memphis, LLC and Kirby Oaks Integra, LLC, d/b/a Waverly Glen (the "Debtors") pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") for the Debtors and their Estates.

### SUMMARY OVERVIEW

This First Amended Joint Plan of Reorganization ("Plan") is a comprehensive proposal by the Plan Proponents that provide for the sale of the assets of the Debtors in satisfaction of the Debtors' loans to First Tennessee, as modified in the Plan. The Plan provides for a greater distribution to subordinate lien holders, priority unsecured claims and general unsecured claims than would be realized in a Chapter 7 liquidation.

This Plan provides for three (3) classes of secured claims; two (2) classes of unsecured claims; and one (1) class of equity security holders. General unsecured creditors holding allowed claims will receive payments equal to 2% of their Allowed Claim. This Plan also provides for the payment of administrative and priority claims as set forth herein.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected.

You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

# ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

1.1   **Administrative Claim** means an administrative expense Claim under § 503(a) and (b) of the Bankruptcy Code, including Fee Claims, whenever incurred and irrespective of whether any payment or transfer has been made on behalf of such administrative expense Claim, and the fees payable to the United States Trustee under 28 U.S.C. § 1930.

1.2   **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the percentage of partnership interest representing any Allowed Interest.

1.3   **Allowed Claim and Allowed Interest** means, with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtor(s), proof of which, if required, was Filed on or before the Bar Date, which is not a Contested Claim or Contested Interest, (ii) if no proof of claim or interest was so Filed, a Claim against or Interest in the Debtors that has been or hereafter is listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent, or (iii) a Claim or Interest allowed hereunder or by Final Order. An Allowed Claim or Allowed Interest does not include any Claim or Interest or portion thereof which is a Disallowed Claim or Disallowed Interest or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, an Allowed Claim or Allowed Interest shall not include any amount for punitive damages or penalties.

1.4   **Asset Purchase Agreement or "APA"** means that certain asset purchase agreement by and between the Debtors and Newco or its subsidiaries which provides for the sale of the Debtors assets for a purchase price of $4,000,000, plus the assumption of certain priority and administrative claims of the Debtor.

1.5   **Avoidance Actions** means any claim or cause of action belonging to the Debtors and arising under the Bankruptcy Code, including, but not limited to, §§ 544, 547, 548 and 550.

1.6   **Bankruptcy Code** means Title 11 of the United States Code, as amended.

1.7   **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Tennessee, Memphis Division.

2

1.8   **Bar Date** means January 29, 2009, the deadline established by the Bankruptcy Court by which a Claim must be timely filed.  With respect to governmental entities the Bar Date means March 31, 2009.

1.9   **Business Day** means any day, other than a Saturday, Sunday, or legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

1.10   **Causes of Action** means all claims or causes of action that belong to the Debtors and/or that could have been brought by the Debtors under state or federal law, including the Bankruptcy Code.  Such claims and causes of actions include, but are not limited to, any claim or cause of action under a policy of insurance, claims, if any, against former officers and former directors of the Debtors, Avoidance Actions under the Bankruptcy Code, and any other causes of action belonging to the estate of the Debtors.

1.11   **Chapter 11 Case** means the above entitled and numbered cases being jointly administered filed by the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

1.12   **Claim** means (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.13   **Claimant** means a holder of a Claim.

1.14   **Class** means all of the holders of Claims against or Interests with respect to the Debtors that have been designated as a class or subclass in Article III hereof.

1.15   **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

1.16   **Confirmation Date** means the date of entry by the Bankruptcy Court of an order confirming the Plan.

1.17   **Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court in which the Plan Proponent shall seek Confirmation of this Plan.

1.18   **Confirmation Order** means the Final Order confirming this Plan, together with any supplements, amendments, or modifications thereto.

1.19   **Consummation** shall mean that substantially all payments required to be made under the Plan on the Effective Date have been made.

1.20   **Contested** when used with respect to a Claim or Interest, means a Claim against, or Interest in, the Debtors that is:  (i) listed in the Debtors' Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely Filed; (ii) listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to

3

which a proof of Claim or Interest has been Filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in the Debtors' Schedules; or (iii) the subject of an objection which has been or may be timely Filed and which claim has not been disallowed by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

1.21   **Creditor** means holder of a Claim as of the Petition Date.

1.22   **Debtors** mean Waverly Gardens of Memphis, LLC and Kirby Oaks Integra, LLC, the debtors and debtors-in-possession in this Case.

1.23   **Disallowed Claim or Disallowed Interest** means a Claim against, or Interest in, the Debtors, or any portion thereof, (i) that has been disallowed by Final Order, (ii) proof of which has been untimely Filed and as to which no Order of allowance has been entered by the Bankruptcy Court, or (iii) listed as disputed, contingent, or unliquidated as to which no proof of claim or proof of interest has been timely Filed.

1.24   **Disclosure Statement** means the Disclosure Statement for this Plan, together with any supplements, amendments, or modifications thereto.

1.25   **Effective Date** means (i) the earlier of the first business day of the first month that is more than thirty (30) days following the Confirmation Date, or such date following the Confirmation Date as may be agreed upon by Newco, First Tennessee Bank and the Debtors (ii) in the event the Confirmation Order is appealed or a motion to reconsider is filed and a stay of the Confirmation Order has been entered, the thirtieth (30th) day after the entry of a Final Order denying the motion, dismissing such appeal or affirming the bankruptcy court's Confirmation Order; provided, that the Plan Proponents or Newco may, upon notice to the Court and the Debtors, extend the Effective Date for a period not to exceed the later of thirty (30) days or the date upon which Newco, or its subsidiaries, obtain the necessary licenses to continue the business of Kirby Oaks Integra, LLC as an assisted living facility, provided, however, that if Newco has not obtained its necessary licenses within 90 days after entry of the Confirmation Order, then the Plan Proponents shall have the right to prohibit any further extension by Newco.

1.26   **Entity** includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

1.27   **Estate** means the bankruptcy estate of the Debtors created by Section 541 of the Bankruptcy Code upon the commencement of the Debtors' Chapter 11 Case.

1.27   **Exit Loan** means that certain post-confirmation loan to be made by First Tennessee Bank Reorganized Debtors as provided in Article VI of this Plan.

1.28   **Facilities** means Waverly Gardens and Waverly Glen, collectively.

1.29  **Fee Claim** means a Claim for fees and expense reimbursements under Sections 330 or 503(b) of the Bankruptcy Code.

1.30  **Filed** means filed with the Bankruptcy Court.

1.31  **Final Order** means:  (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing, shall then be pending or, (ii) in the event that an appeal, writ or certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order at the option of the Debtors if no stay pending appeal has been obtained.

1.32  **First Tennessee** means First Tennessee Bank National Association, one of the Plan Proponents and largest secured creditor of the Estate.

1.33  **Allowed Unsecured Priority Claims** means an allowed, unsecured, non-administrative priority claims for amounts owed that are entitled to priority as unsecured claims incurred prior to the Petition Date.

1.34  **Impaired** means the treatment of an Allowed Claim or Allowed Interest under this Plan **unless**, with respect to such Claim or Interest, either:  (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtors (A) cure any default that occurred before, on or after the commencement of the Chapter 11 Case other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstate the maturity of such Claim or Interest as such maturity existed before such default; (C) compensate the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) do not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest.

1.35  **Interest** means the prepetition memberships in the Debtor.

1.36  **Kennedy** means Joseph A. Kennedy, managing member of both Waverly Gardens and Waverly Glen and prepetition manager of daily operations of each business.

1.37  **Legal Rate** means, with respect to a Claim, the interest rate accruing upon judgments as set forth in 28 U.S.C. § 1961.

1.38  **Lien** means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtors' estate which is permitted by, or not avoided pursuant to the Bankruptcy Code.

1.39  **Litigation** means (i) all Causes of Action; (ii) all Avoidance Actions; and (iii) any and all policies of insurance or indemnity agreements related to any litigation, and all rights and remedies of these estates under all policies of insurance or indemnity agreements related to such litigation.

1.40  **Marger** means Marger Partners.

1.41  **Newco Holding Company** means a Tennessee limited liability company  to be organized by Mark Rosenberg and/or other investors to acquire the assets of the Debtors through one or more wholly owned subsidiaries, as provided in this Plan, with title of such assets to be held in such subsidiaries of Newco.

1.42  **Order** means an order or judgment of the Bankruptcy Court.

1.43  **Other Priority Claims** means and includes priority claims except Administrative Claims.

1.44  **Petition Date** means October 2, 2008.

1.45  **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein or in accordance with Section 1127 of the Bankruptcy Code.

1.46  **Plan Proponents** means First Tennessee Bank National Association and the Debtors.

1.47  **Priority Claim** means all Claims entitled to priority under Section 507(a) (2)-(a) (7) and (a) (9) of the Bankruptcy Code.

1.48  **Priority Tax Claim** means all Claims for Taxes entitled to priority under Section 507(a) (8) of the Bankruptcy Code, and shall include all Tax Claims secured by assets of the Estate.

1.49  **Pro Rata** means a proportionate share and, with reference to any distribution on account of an Allowed Claim or Allowed Interest, the proportion that an Allowed Claim or Allowed Interest in a particular Class bears, respectively, to the aggregate amount of all Claims or Interests in such Class, including Contested Claims or Contested Interests which are not Disallowed Claims or Disallowed Interests as of the date of such calculation.

1.50  **Reorganized Debtors** means the post-confirmation Debtors as restructured in accordance with this Plan.

1.51  **Schedules** means those schedules and statements of financial affairs Filed by the Debtor under Federal Rule of Bankruptcy Procedure 1007, as same may be amended from time to time.

1.52  **Secured Claim (or Allowed Secured Claim)** means an Allowed Claim that is secured by a lien on or security interest in property in which the Estate has an interest, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of a

6

Claimant's interest in such Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

1.53    **Taxes** means and includes all federal state, county and local income, ad valorem, excise, stamp and other taxes of any type or nature whatsoever.

1.54    **Tax Claims** means any and all Secured or Priority Claims of any Entity for the payment of any Taxes (a) accorded a priority pursuant to § 507(a)(8) of the Bankruptcy Code (but excluding all Claims for post-petition interest and pre-petition and post-petition penalties, all of which interest and penalties, pre-confirmation and post-confirmation, shall be (i) deemed disallowed and (ii) fully discharged on the Confirmation Date), or (b) secured by valid Liens on assets of the Debtor existing on the Confirmation Date (but excluding all Claims for post-petition interest and pre-petition and post-petition penalties, all of which interest and penalties shall be (i) deemed disallowed and (ii) discharged on the Confirmation Date). Additionally, all Liens securing Tax Claims shall be deemed and legally treated as released, voided and discharged on the Confirmation Date.

1.55    **Unsecured Claim and General Unsecured Claim** means any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or an unsecured priority claims, or a Secured Claim, including but not limited to: (a) Claims under executory contracts and unexpired leases that have heretofore been rejected, that are rejected under this Plan or that may be rejected prior to the Confirmation Date (but not including administrative expenses arising from an executory contract or unexpired lease which has heretofore been rejected); (b) Claims for unpaid wages or benefits (including claims for vacation, sick and holiday pay) to the extent not entitled to be Priority Claims as provided herein; and (c) any other obligations, liabilities, damages or any other Claim held against the Debtor of every type and nature whatsoever incurred on or before the date of filing of this Chapter 11 case.

1.56    **Waverly Gardens** means the facility consisting of 196 rental units located at 6539 Knight Arnold Road, Memphis, Tennessee 38115.

1.57    **Waverly Glen** means the facility consisting of 52 rental units located at 6551 Knight Arnold Road, Memphis, Tennessee 38115.

## ARTICLE II
## TREATMENT OF NON-CLASSIFIED CLAIMS

2.1    **Administrative Claims**

(a)    **General Allowed Administrative Claims.** Each holder of an Administrative Claim, except as otherwise set forth in Sections (b), (c), and (d) of this Section 2.1 of this Plan shall receive either: (i) with respect to Administrative Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in cash on the Effective Date; (ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim in one cash payment as soon as practicable after such claim becomes an Allowed Administrative Claim; or (iii) such other treatment

agreed upon by the Debtor and such holder; <u>provided, however</u>, that any such Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor which is not past due on the Effective Date shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such liability and any agreements relating thereto. Any person or Entity that asserts an Administrative Claim that is not paid on the Effective Date and which by its terms is not payable within 30 days from the Effective Date shall be required to file with the Bankruptcy Court an application for payment of such asserted Administrative Claim and to serve notice thereof on all parties entitled to such notice. Any such claims must be filed within 30 days from the Effective Date. The failure to file timely the application as required under this Section 2.1(a) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Claim with respect to which an application has been properly filed pursuant to this Section 2.1(d) of this Plan and to which no objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Administrative Claim to the extent such Claim is allowed by Final Order.

(b)     **Fee Claims of Professionals.** Each professional person whose retention with respect to this Chapter 11 Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within thirty (30) days after the Effective Date and to serve notice thereof on the United States Trustee, First Tennessee Bank and Marger Partners pursuant to applicable Bankruptcy Rules and in accordance with any orders entered in this case regarding compensation of professionals, provided, further, that legal fees for counsel for the Debtors which are incurred more than thirty (30) days after the Effective Date and prior to the closing of the case may be paid by the Reorganized Debtors or Newco without the need to submit further applications to the Bankruptcy Court or to obtain Court approval. Payment of Court-approved compensation or otherwise provided for in the paragraph shall be made promptly Neither the Reorganized Debtors, Newco nor the Plan Proponents will have any obligation for any Fee Claim that is disallowed or not approved by the Bankruptcy Court or that is not otherwise provided for in this paragraph.

(c)     **Administrative Tax Claims.** Each holder of an Administrative Claim for Taxes for which the Debtor is responsible and any other Taxes of the Debtor payable pursuant to Section 507(a) (1) of the Bankruptcy Code and which have become due on or prior to the Effective Date shall be paid as follows: (a) one half on the effective date and (b) the other half in 6 monthly installments commencing thirty days after the Effective Date and shall accrue interest at their statutory rates. Accrued taxes for 2010 which are not due and payable shall be prorated as of the Effective Date and shall be paid post-confirmation in the ordinary course of business as such taxes become due and payable. Any person or Entity that asserts an Administrative Claim for Taxes shall be required to file with the Bankruptcy Court an application for payment of such asserted Administrative Claim and to serve notice thereof on all parties entitled to such notice. Any such claims must

8

be filed within thirty (30) days from the Effective Date.  The failure to file timely the application as required under this Section 2.1(c) of this Plan shall result in the Claim being forever barred and discharged.  An Administrative Claim for Taxes with respect to which an application has been properly Filed pursuant to this Section of this Plan and to which no objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

(d)    **Payment of Fees to U.S. Trustee.**  All fees payable under 28 U.S.C. § 1930 shall be paid in cash in full within thirty (30) days of the Effective Date.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

Pursuant to Section 1123(a) (1) of the Bankruptcy Code, the Plan Proponents designate the following Classes of Claims and Interests.

3.1    **Class 1 – Secured Claim of First Tennessee Bank.**  Class 1 consists of the Allowed Secured Claim of First Tennessee consisting primarily of principal, interest and related fees incurred by First Tennessee under the terms of certain loan documents between the Debtors and First Tennessee.

Class 1 is impaired.

3.2    **Class 2 – Secured Claim of Marger.**  Class 2 consists of the Allowed Secured Claim of Marger consisting primarily of principal, interest and related fees incurred by Marger under the terms of certain loan documents between Waverly Gardens and Marger.  Class 2 is impaired.

3.3    **Claim 3 – Secured Claim of Tax Creditors.**  Class 3 consists of the Allowed Secured Claims for real property and personalty taxes held by the City of Memphis and Shelby County Trustee. Class 3 is impaired

3.4    **Class 4 – Allowed Unsecured Priority Claims**.  Class 4 consists of Allowed Unsecured Priority Claims. Class 4 is impaired.

3.5    **Class 5 - General Unsecured Claim**  Class 5 consists of the Allowed Claims of creditors holding General Unsecured Claims.  Class 5 is impaired.

3.6    **Class 6 -- Interest Holders**.  Class 6 consists of the Interests in the Debtors.  The Interests of the Debtors shall be cancelled as of the Effective Date.   Class 6 is impaired.

## ARTICLE IV
## PROVISIONS FOR SATISFACTION OF CLASSIFIED CLAIMS AND INTERESTS

The Claims and Interests as classified in Article III hereof shall be satisfied in the manner set forth in this Article IV.  The treatment of, and the consideration to be received by Entities holding Allowed Claims against and/or Allowed Interests in the Debtor and the Estate pursuant

to this Plan shall be in full settlement, release, and discharge of their respective Allowed Claims against and/or Allowed Interests in the Debtor and the Estate, but shall not affect the liability of any other Entity on such Claim or Interest.

4.1   **Class 1 – Secured Claim of First Tennessee.**   The Allowed Secured Claim of First Tennessee shall be paid as follows: (i) the Debtors shall convey all assets to Newco or its designated subsidiaries pursuant to the terms of an Asset Purchase Agreement to be filed with the Court prior to the confirmation hearing, (ii) Newco shall obtain financing from First Tennessee in the amount of $4,000,000.00 pursuant to the terms of the Newco Loan Agreement to be entered into between Newco or its subsidiaries and First Tennessee, which agreement shall include, inter alia, the following provisions: (a) Commencing on the Effective Date until the tenth (10th) month following the Effective Date, Newco will make monthly interest payments to First Tennessee on the indebtedness owed at five percent (5%) per annum; (iv) Newco will commence making monthly principal payments in the amount of $5,000.00 to First Tennessee on the tenth (10th) month following the Effective Date; (v) Commencing on the thirteenth (13th) following the Effective Date, Newco will make monthly principal payments in the amount of $10,000.00 until the Maturity Date. First Tennessee will have no ownership or equity interest in the Newco.  First Tennessee and Newco will enter into a Participation Agreement as provided under TCA § 47-24-101 and 102 wherein First Tennessee will have the right to participate in increased value received as a result of a refinance, sale, or other disposition of the assets.  A Participation Agreement will be incorporated into the Newco Loan Agreement.

4.2    **Class 2 -- Claim of Marger.**   All of Marger's pre-petition claims shall be extinguished as of the Effective Date. Marger shall receive, $14,800.00 (4%). upon the sale or refinance of the Facilities.

4.3    **Claim 3 –Secured Claim of Tax Creditors.**   Class 3 Claims will be paid by Newco in equal monthly installments over a period not to exceed 60 months from the Petition Date at the applicable statutory rate of interest; provided, however, that in the event of a sale of the Facilities or other assets by Newco the balance of each of the Allowed Claims of Class 3 Creditors shall be paid out of the net proceeds of a sale after satisfaction of any prior secured claims or prior class claims. The liens of secured tax claims shall continue to attach to the assets conveyed to Newco under this Plan.

4.4    **Class 4 – Allowed Unsecured Priority Claims**.  Class 4 Claims will be paid by Newco in equal monthly installments over a period not to exceed 60 months from the Petition Date at the applicable statutory rate of interest; provided, however, that in the event of a sale of the Facilities or other assets of the Debtors the balance of each of the Allowed Claims of Class 4 Creditors shall be paid out of the net proceeds of a sale after satisfaction of any secured claims or prior class claims.

4.5    **Class 5 -- General Unsecured Claims.**   Each person or Entity holding a Class 5 Claim shall receive payment equal to 2% of the Allowed Claim.  Such payment shall be paid on the Effective Date.

4.6    **Class 6 Interest Holders.**  There shall be no distribution to members of Class 6 account of their pre-petition Interests and such Interests shall be cancelled as of the Effective Date.

**ARTICLE V**
**DESIGNATION OF THE CLASSES OF CLAIMS**
**IMPAIRED UNDER THIS PLAN**

5.1    **Impaired Classes.**  For purposes of Plan solicitation, Classes 1, 2, 3, 4, 5, and 6 are Impaired and are, therefore, entitled to cast ballots on this Plan.

5.2    **Unimpaired Classes.**  For purposes of Plan solicitation, unclassified claims are not Impaired and are, therefore, not entitled to cast ballots on this Plan.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.1    **Transfer of Assets**.  On or about the Effective Date, the Debtors shall convey all of their assets to Newco pursuant to the terms of the Asset Purchase Agreement between Newco and the Debtors. The assets of the Debtors shall be assigned to Newco or its subsidiaries free and clear of all liens, claims, and encumbrances or interests, except to the extent that such liens and claims are expressly conveyed, granted or retained under this Plan pursuant to the terms of the Loan Modification, Assumption, and Assignment Agreement.

6.2    **Exit Financing Loan**. In order to satisfy the payment of administrative claims payable on the Effective Date, other than administrative claims payable in accordance with ordinary business terms granted to the Debtors, and to provide post-confirmation working capital and approved capital expenditures, First Tennessee shall make a loan to  Newco in an amount estimated to be $500,000.00 ( the "Exit Loan"). The Exit Loan shall be secured by a first priority security interest in all of the Debtor's assets and shall be payable upon the earlier of the sale or refinancing of the Facilities or twenty-four (24) months following the effective date.  Newco will make interest only payments to First Tennessee on the Exit Loan indebtedness, and principal reduction payments out of Excess Net Operating Income. Excess Net Operating Income shall mean the Net Operating Income from the Facilities less (i) pre and postpetition liabilities of the Debtor which are paid by Newco (ii) interest paid by Newco on the Term Loan and Exit Financing Loan (iii) capital expenditures and (iv) any other costs which may be mutually agreed upon between First Tennessee and Newco.

6.3    **Payment of Administrative Claims**.  The funds necessary to pay Allowed Administrative Claims on the Effective Date shall be provided from the  Exit Loan.

6.4    **Post Confirmation Ownership and Management of Reorganized Debtors**. Upon the Effective Date, the membership interests of Class 6 Interest Holders shall be extinguished. Prior to Confirmation, the Debtors shall designate a representative who, upon the Effective Date, shall be authorized to manage the affairs of the Debtors in order to wind up and conclude the administration of this case

6.5     **Management of Newco.**  The Board of Directors of Newco will approve the selection of officers of Newco and its subsidiaries. The Facilities will be managed by a management company approved by Newco's board of directors. The management will be compensated on terms to be agreed upon.

6.6     **Causes of Action.**  The Reorganized Debtors will be responsible for evaluating, funding and pursuing any or none of the Litigation based on its reasonable business judgment.

6.7     **Authority for Settlement of Causes of Action.**    After the Effective Date, the Reorganized Debtors shall, in their sole and absolute discretion, be authorized to compromise and settle any of the Litigation, without Court approval or notice to any party, at any time and for any consideration that the Reorganized Debtors or their designee believes to be in its best interest (and not necessarily in the best interest of the Creditors) including, inter alia, the right to accept zero-cash or non-cash benefits.

6.8     **Treatment of Executory Contracts.**  Subject to the requirements of Section 365 of the Bankruptcy Code, on the Effective Date, all executory contracts and unexpired leases of the Debtorsshall be deemed rejected except: (a) any executory contracts and unexpired leases which are the subject of separate motions to assume or reject filed before the entry of the Confirmation Order; (b) all executory contracts or unexpired leases assumed by order of the Court entered before the Confirmation Date or specifically assumed under the provisions of the Plan; and (c) existing leases with tenants with respect to the Project. Any order entered after the Confirmation Date by the Bankruptcy Court which, after notice and a hearing, authorizes the rejection of an executory contract or unexpired lease shall cause such rejection to constitute a pre-petition breach under Sections 365 and 502 of the Bankruptcy Code as if such relief was granted and such order was entered prior to the Confirmation Date.

6.9     **Specific Assumption of Certain Contracts.**  As of the Effective Date, all existing leases with tenants which were entered into in the ordinary course of the Debtors' business shall be assumed and assigned to Newco or its designated subsidiary, provided however, that Newco or its designee may reject and not assume a lease with any tenant by giving notice of rejection within sixty (60) days following the Effective Date.  Rejection of such a tenant lease shall be effective on the date the notice is given to the tenant.

6.10    **Claims for Damages.**  Each person who is a party to an Executory Contract rejected pursuant to this Article shall be entitled to File, not later than thirty (30) days after (i) the Effective Date or (ii) the date on which the contract is rejected, a Claim for damages alleged to arise from the rejection of the Executory Contract to which such person is a party.  Any such Claims that ultimately become Allowed Claims shall be treated as Class 5 General Unsecured Claims.

## ARTICLE VII
## DISTRIBUTIONS UNDER THE PLAN

7.1     **No Distributions Pending Allowance or Estimation of Claims.**  No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless

and until such Claim becomes an Allowed Claim, or Allowed Interest, as determined by Final Order.

7.2   **Unclaimed Property.**  Any distribution or payment to a Creditor shall be sent by first class mail to the Creditor's address indicated on the proof of claim filed by that Creditor in the Case or, if no proof of claim has been filed, to that Creditor's most recent address indicated on the Debtors' Schedules or known to the Debtor. If a Creditor holds an Allowed Claim by virtue of a transfer of such Claim pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure, then distributions to the holder of such Claim shall be sent to the address set forth in evidence of the transfer filed with the Bankruptcy Court. If any distribution remains unclaimed for a period of ninety (90) days after it is sent by Debtor, then the Creditor to whom such distribution was sent will be deemed to have forfeited the distribution, and such person's Claim shall no longer be deemed to be Allowed, but rather, such Claim shall be deemed disallowed and expunged for all purposes, and such person shall be deemed to have no further Claim in respect of such distribution and shall not participate in any further distributions under this Plan.

7.3   **Precluded Distributions.** No distribution shall be made in violation of Bankruptcy Code § 502(d) (to an entity or transferee liable for recoverable property for an avoidable transfer). The Debtors shall notify each affected Creditor of any contention that Bankruptcy Code § 502(d) prohibits any distribution to such Creditor. If such notice is given, the Claim held by such creditor will be treated as a Disputed Claim hereunder.

7.4   **Treatment of Contingent or Unliquidated Claims.** Until such time as a contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Contested Claim for purposes related to voting, allowance, and distributions under this Plan. The Bankruptcy Court upon request by the Debtors, shall in a summary proceeding for each such contingent Claim or unliquidated Claim, by estimation determine the allowability of each such contingent or unliquidated Claim for purposes of voting on this Plan.

7.5   **Payment Dates.** Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day.

**7.6**   **Distribution Record Dat**e. Thirty (30) days after entry of the Confirmation Order (the "Distribution Record Date"), the Claims Register will be deemed closed, an no further changes in the record holders o fany Claim or Equity Interests will be recognized unlesss otherwise specifcally provided under the Plan or agreed to in writing by the Debtors, First Tennessee and Newco. Neither the Reorganized Debtors nor Newco will have any obligation to recognized any transfer of any Claim occurring on or after the Distribution Record Date. The Reorganized Debtors and Newco will be authorized and entitled to recognized for all purposes under the Plan only with those record holders identified on the Claims Register as of the close of business on the Distribution Record Date or as identified as not being disputed, unliquidated or contingent in the Debtors' schedules.

## ARTICLE VIII
## PROVISIONS FOR THE DISCHARGE, SETTLEMENT
## AND ADJUSTMENT OF CLAIMS

8.1    **Reservation of Claims and Causes of Action.**  Any and all claims, causes of action, cross claims or counterclaims held or assertable by the Debtors, including but not limited to:  (i) the Causes of Action; (ii) any claim or cause of action against any members or directors whether or not covered under a directors and officer policy of liability insurance or otherwise; (ii) any claim or cause of action arising from any payment made to any person or entity during the pendency of these cases, including a claim or cause of action for the disgorgement of the payment of Administrative Claims; (iv) the Avoidance Actions; and (v) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtors have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse or insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, and obligation of good faith and fair dealing, whether or not in connection with or related to the loan papers and this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by and for the benefit of the Reorganized Debtors or its designee.  It is the intent of the Plan Proponent that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtors' schedules, and shall include any disclosure statement filed in these cases.

8.2    **Avoidance Actions.**  The Reorganized Debtors are appointed as the representative of the Estate pursuant to § 1123(b)(3) of the Bankruptcy Code to pursue the Litigation and shall be the only entity authorized to pursue actions to recover preferences, fraudulent conveyances, and all other avoidance actions under Chapter 5 of the Bankruptcy Code. Unless the Reorganized Debtors consent in writing, or unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue any such actions.  Any Creditor determined to have received a transfer that is voidable pursuant to Sections 544, 547, 548, 549, and /or 550 of the Bankruptcy Code or any other applicable law shall be required to remit the Debtor the determined amount of the avoided transfer prior to receiving any distribution under the Plan.

14

## ARTICLE IX
## EFFECT OF CONFIRMATION, DISCHARGE, AND INJUNCTION

9.1    **Vesting of Property.**   Except as otherwise provided in the Plan, Confirmation of the Plan shall vest all of the property of the Debtor which is not conveyed to Newco or its subsidiaries into the Reorganized Debtors except as specifically provided for within the Plan.

9.2    **Property Free and Clear.**   Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all claims, Liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

9.3    **Legal Binding Effect; Discharge of Claims and Interests.**   The provisions of this Plan shall: (i) bind all Claimants and Interest holders, whether or not they accept this Plan, and (ii) discharge the Debtors, jointly and severally, from all Claims, debts and liabilities that arose before the Petition Date, and from any Claims, debts and liabilities, including, without limitation, any Claims, debts and liabilities of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, that arose, or has been asserted against, the Debtors, jointly or severally, at any time before the entry of the Confirmation Order or that arises from any pre-Confirmation conduct of the Debtors, jointly or severally, whether or not the Claims, debts and liabilities are known or knowable by the Claimant or Interest holder.

9.4    **Effect on Third Parties.**   Except as otherwise expressly provided in this Plan, nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any Creditors' rights as against any third party.

9.5    **Release and Discharge of Claims and Interests.**   Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction, release and discharge of the Debtors and their assets from all Claims of any Creditor, including Claims arising prior to the Confirmation Date. Provided, however, that, with respect to the United States, nothing in this Paragraph, or in Paragraph 10.6, shall be construed to enlarge the discharge beyond what is provided in 11 U.S.C. § 1141(d)(1).

9.6    **Permanent Injunction.**   Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold or may hold Claims or Interests that existed prior to the entry of the Confirmation Order, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors, the Purchaser or any of their affiliates or subsidiaries on account of Claims against or Interests in the Debtors arising prior to the entry of the Confirmation Order; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Plan Proponent or any of their affiliates or subsidiaries, or any assets or property of same with respect to Claims arising prior to the entry of the Confirmation Order; or (iii) creation,

perfection or enforcement of any encumbrance of any kind against the Plan Proponent or any of their affiliates or subsidiaries arising from a Claim arising prior to the entry of the Confirmation Order. This provision does not enjoin the prosecution of any claims that arise on or after the entry of the Confirmation Order nor does it enjoin the determination of the Allowed Amount of any Claims that arose prior to the entry of the Confirmation Order by a court of competent jurisdiction. Provided, however, that notwithstanding the above, the prohibitions in this Paragraph shall not apply to any action undertaken by or on behalf of the United States, or any of its agencies and departments, against the Plan Proponent or any of their affiliates.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1   **Request for Relief Under Section 1129(b).**   In the event any Impaired Class of Interests shall fail to accept this Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtors request the Bankruptcy Court to confirm this Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

10.2   **Modification.**   The Plan Proponent may propose amendments or modifications of this Plan at any time prior to the Confirmation Date, with leave of the Bankruptcy Court, upon notice to appropriate parties if required under the Bankruptcy Code.   After confirmation, the Plan Proponent or the Reorganized Debtors may, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.   The foregoing provisions of this Article XI do not limit the ability of any party to modify the Plan under 11 U.S.C. § 1127 and applicable rules.

10.3   **Headings.**   All heading utilized in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purposes.

10.4   **Due Authorization.**   Each and every Claimant and Interest holder who elects to participate in the distributions provided for herein warrants that such Claimant or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtors, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant or Interest holder under this Plan.

10.5   **Authorization of Corporate Action.**   All matters and actions provided for under this Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors or their affiliates shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the members or directors of the Debtors.   Specifically, all amendments to the Charter and By-laws of the Debtors pursuant to this Plan and all other corporate action on behalf of the Debtors or its affiliates as may be necessary to put into effect or carry out the terms and intent of this

16

Plan and the orders and decrees of the Bankruptcy Court entered in the Chapter 11 Case, may be effected, exercised and taken without further action by the directors or members of the Debtors, as applicable, with like effect as if effected, exercised and taken by unanimous action of the directors and members of the Debtors, as applicable.

10.6    **Further Assurances and Authorizations.**  The Reorganized Debtors, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of this Plan.  All terms and provisions of this Plan shall be construed in favor of the Reorganized Debtors.

10.7    **Additional Acts or Actions.**  The Plan Proponent may, but shall not be obligated to, take any action or commit any act that it determines to be necessary to facilitate the consummation, implementation, effectuation and execution of this Plan.

10.8    **Applicable Law.**  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Tennessee without reference to the laws of other jurisdictions.

10.9    **No Interest.**  Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Petition Date.

10.10   **No Attorneys' Fees.**  Except as provided in this Plan, no attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtors, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

10.11   **Post-Confirmation Actions.**  After Confirmation, the Reorganized Debtors may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

10.12   **Setoff.**  Except as specifically provided in the Plan or the Bond Documents, no Creditor shall retain any contractual or statutory right to set off any asset in which the Debtors have an interest in satisfaction of that Creditor's pre-petition Claim.  Provided, however, that with respect to Claims of the United States, setoff rights are preserved to the full extent permitted by the Bankruptcy Code and federal law.

10.13   **Notice of Default.**  In the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the Plan Proponent, with copies to counsel of record for the Plan Proponent, specifying the nature of the default.  Upon receipt of the default notice, the Plan Proponent shall have ten (10) days to cure such default from the time of receipt of the default notice.  If such default has not been cured within the applicable time period, the default may be brought to the attention of the Bankruptcy Court or any other court of competent jurisdiction.

10.14    **Notices.**  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.

11.15    **Application of § 1146(a)** -The transfer of the Assets to Newco and/or its subsidiaries,    , is deemed to be part of a plan pursuant to Section 1146(a) of the Bankruptcy Code and does not and will not subject the Debtors or Newco, or its affiliates, subsidiaries or designees to any liability for a stamp tax or similar tax, including, without limitation, any transfer tax, or pursuant to any so-called bulk transfer law, to the fullest extent permitted by Section 1146(a) of the Bankruptcy Code.  The Final Order shall provide that all filing officers shall be, and are directed to accept for recording or filing, and to record or file those documents by which the assets will be assigned and conveyed that are intended to be recorded or filed and that are presented to them for recording or filing, immediately upon presentation thereof, without payment of such taxes, and all recording officers shall be hereby directed to comply with the provisions of the Final Order.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain exclusive jurisdiction over this Chapter 11 Case after Confirmation, notwithstanding Consummation or substantial consummation, for the following purposes:

(a)    to consider and effect any modification of this Plan under Section 1127 of the Bankruptcy Code;

(b)    to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

(c)    to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

(d)    to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

(e)    to hear and determine all claims that the Debtors, as debtors-in-possession qua trustee, could assert under the Bankruptcy Code;

(f)    to consider and act on such other matters consistent with the Plan as may be provided in the Confirmation Order;

(g)    to make such orders as are necessary and appropriate to carry out and implement provisions of this Plan;

18

(h)     to approve the reasonableness of any payments made or to be made, within the meaning of Section 1129(a)(4) of the Bankruptcy Code;

(i)     to exercise the jurisdiction granted pursuant to Section 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of, such taxes paid by the Debtors;

(j)     to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtors or the Plan Proponent.

Nothing contained in this Article XII shall be construed so as to limit the rights of the Plan Proponent to commence or prosecute any claim in any court of competent jurisdiction.

[Remainder of Page Intentionally Left Blank]

DATED:       May 19, 2010.

FIRST TENNESSEE BANK NATIONAL
ASSOCIATION


By:       /s/ Kurt L. Hewett

Its:      Vice President


By:       /s/R. Spencer Clift III

          R. Spencer Clift, III (20445)
          **Baker,    Donelson,    Bearman,
          Caldwell & Berkowitz**
          165 Madison Ave.
          Memphis, TN 38103
          Telephone:  (901) 526-2000
          Facsimile:   (901) 577-0834

          **Attorneys   for   First   Tennessee
          Bank National Association**


          **WAVERLY GARDENS OF MEMPHIS,

          LLC**

          By: Provision Management , LLC
          By: /s/ Carl Murchland
          Chief Manager

          **KIRBY OAKS INTEGRA, LLC
          d/b/a Waverly Glen**

          By: Provision Management , LLC
          By: /s/ Carl Murchland
          Chief Manager

20

**BUTLER, SNOW, O'MARA, STEVENS CANNADA, PLLC**

By /s/ Michael P. Coury
Michael P. Coury (TN 7002)
6075 Poplar Avenue
Suite 500
Memphis, Tennessee 38119
(901) 680-7200
*Attorneys for the Debtors-in-Possession*

Memphis 1685047v1