**Dated: July 08, 2010**
**The following is SO ORDERED:**

_____
**Paulette J. Delk**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| WAVERLY GARDENS OF | ) Case No. 08-30218-PJD |
| MEMPHIS, LLC | ) Case No. 08-30221-PJD |
| KIRBY OAKS INTEGRA, LLC | ) Chapter 11 |
| d/b/a WAVERLY GLEN | ) (Jointly Administered) |
| | ) |
| Debtor. | ) |

**FOURTH AGREED ORDER AUTHORIZING USE OF CASH COLLATERAL & (II) PROVIDING ADEQUATE PROTECTION UNDER 11 U.S.C. §§ 361 AND 363**

As evidenced by the signatures of counsel below, First Tennessee Bank National Association ("First Tennessee"), and Waverly Gardens of Memphis, LLC ("Waverly") and Kirby Oaks Integra, LLC, (Kirby Oaks,") (collectively, Kirby Oaks and Waverly are referred to herein as the "Debtors") hereby stipulate and agree, and the Court finds as follows with respect to the use of cash collateral and adequate protection of First Tennessee's interest in the same.

**THE CONTESTED MATTERS ON THE
USE OF CASH COLLATERAL & ADMINISTRATION OF THE CASES**

- 1 -

M RSC 2076258 v2
2100000-B08841  07/06/2010

On or about October 3, 2008, the Debtors filed Emergency Motion(s) for Authorization to Use the Cash Collateral (the "Motion") [Docket Entry No. 13]. On or about October 5, 2008, First Tennessee filed Objection(s) to the Motion(s) for Authorization to Use the Cash Collateral (the "Objection") [Docket Entry No. 17]. On October 6, 2008, the Court held a hearing on the Motion and Objection. Subsequently, Debtors and First Tennessee entered into an Interim Order Authorizing Use of Cash Collateral, Providing Adequate Protection under 11 U.S.C. §§ 363 and 361, and Setting a Date for a Final Hearing on Use of Cash Collateral on November 21, 2008 (the "Interim Order") [Docket No. 38]. The Interim Order expressly provided, *inter alia*, that all objections to the Motion and Interim Order were to be filed by November 6, 2008. No objections were filed to the Interim Order or Motion.

Pursuant to the (1) Order Authorizing Extension of the Interim Order Authorizing Use of Cash Collateral, Providing Adequate Protection under 11 U.S.C. §§ 363 and 361, and Setting a Date for a Final Hearing on Use of Cash Collateral and (2) Second Order Authorizing Extension of the Interim Order Authorizing Use of Cash Collateral, Providing Adequate Protection under 11 U.S.C. §§ 363 and 361, and Setting a Date for a Final Hearing on Use of Cash Collateral, Debtors were authorized to use cash collateral until March 3, 2009. [Docket No. 75 & 88].

After extensive negotiations, First Tennessee and the Debtors agreed to terms allowing the consensual use of cash collateral, pending confirmation of a Chapter 11 Plan. On or about March 5, 2009, an Agreed Order (I) Authorizing Use of Cash Collateral and (II) Providing Adequate Protection Under 11 U.S.C. §§ 361 and 363 (the "Order") [Dkt. Entry # 92] was approved and entered by this Court. On or about June 19, 2009, First Tennessee and the Debtors entered into an agreed order extending the terms of the Order until September 1, 2009. [Dkt. Entry # 112]. The Debtor was authorized to use cash collateral through December 31, 2009,

- 2 -

pursuant to the Second Agreed Order Extending Terms of Agreed Order (I) Authorizing Use of Cash Collateral and (II) Providing Adequate Protection Under 11 U.S.C. §§ 361 and 363. *See* Dkt Entry #: 131. On or about November 5, 2009, the Debtors and First Tennessee entered into the Third Agreed Order (I) Authorizing Use of Cash Collateral and (II) Providing Adequate Protection Under 11 U.S.C. §§ 361 and 363 [Dkt. Entry # 139]. On or about November 12, 2009, Debtors and First Tennessee entered into the Amended Third Agreed Order (I) Authorizing Use of Cash Collateral and (II) Providing Adequate Protection Under 11 U.S.C. §§ 361 and 363 [Dkt. Entry # 153] (collectively, any and all orders authorizing use of cash collateral are referred to herein as the "Cash Collateral Orders").

Pursuant to the Amended Third Agreed Order, use of cash collateral was conditioned on the Debtors' retention of Provision Management, LLC as a special professional to manage the day to day operation of the Debtors' Facilities. Effective July 1, 2010, the Debtors, after consultation with and obtaining the approval of First Tennessee, replaced Provision Management LLC as the Debtors' manager with Expansion Management Services, LLC.

Based on the previous retention of Provision Management, LLC, and the replacement of Provision Management, LLC, with Expansion Management Services, Inc., the Debtors and First Tennessee submit the instant order to clarify the change in management of the Facilities and key roles and responsibilities of the parties in interest as to the use of Cash Collateral.

Accordingly, First Tennessee and the Debtors have agreed to modify the terms of the existing Cash Collateral Orders and provide specific adequate protection to First Tennessee. Based upon the request of the Debtors and First Tennessee that the Court enter this Order, the Court finds that it is in the best interest of the Debtors and all creditors of the Debtors to provide adequate protection to First Tennessee as set forth herein in order to permit the Debtors to use

M RSC 2076258 v2
2100000-B08841   07/06/2010

First Tennessee's cash collateral. The Court, otherwise being duly advised of the premises, hereby finds and concludes as follows:

## JURISDICTION & VENUE

1. This Court has jurisdiction over this matter and the parties in interest, properties and interests affected hereby pursuant to 28 U.S.C. § 157(b) and § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A)(M)(N) and (O). Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and § 1409. The statutory and procedural predicates for relief are § 363 and Fed. R. Bankr. P. 4001(b).

## BACKGROUND FACTS

2. On or about October 2, 2008 (the "Petition Date"), Waverly, a limited liability company organized under the laws of the state of Illinois, and Kirby Oaks, a limited liability company organized under the laws of the state of Delaware, filed voluntary petition(s) under Chapter 11 of the Title 11 United States Code (the "Bankruptcy Code").

3. The Debtors operate two (2) senior living facilities consisting of a total of 248 units. The facility known as "Waverly Gardens" consists of 196 rental units and is located at 6539 Knight Arnold Road, Memphis, Tennessee 38115. The facility known as "Waverly Glen" consists of 52 rental units and is located 6551 Knight Arnold Road, Memphis, Tennessee 38115 (collectively, Waverly Gardens and Waverly Glen are referred to herein as the "Facilities"). Waverly owns Waverly Gardens. Kirby Oaks owns Waverly Glen.

4. Debtors are in possession of their property and pursuant to 11 U.S.C. § 1108 remain in control of their businesses as no Trustee has been appointed in these cases.

5. No official committee of unsecured creditors has been appointed in this case.

6. Pursuant to an Order Granting Joint Administration Pursuant to Rule 1015 [Docket No. 29], *In re Waverly Gardens of Memphis, LLC*- Case Number 08-30218 and *In re Kirby Oaks Integra, LLC* -Case Number 08-30221 are jointly administered under the instant case number.

7. First Tennessee is a creditor of the Debtors as more particularly described below.

### The Loans

8. First Tennessee, Waverly, and Kirby Oaks are parties to the following documents, among others, as follows:

   i. that certain Loan Agreement dated November 3, 2004, evidencing a loan in the aggregate amount of $6,129,000.00 extended by First Tennessee to Waverly (the "Waverly Loan Agreement");

   ii. that certain Promissory Note in the original principal amount of $5,788,500.00 dated November 3, 2004, executed by Waverly ("Waverly Note I");

   iii. that certain Promissory Note in the original principal amount of $340,500.00 dated November 3, 2004, executed by Waverly ("Waverly Note II");

   iv. that certain that certain Tennessee Mortgage Deed of Trust With Security Agreement and Assignment of Rents and Leases dated November 3, 2004, of record in the Office of the Register of Deeds of Shelby County, Tennessee as Instrument Number 04187357 executed by Waverly (the "Waverly Deed of Trust and Security Agreement");

   v. that certain Assignment of Rents and Leases dated November 3, 2004, executed by Waverly of record in the Office of the Register of Deeds of Shelby County, Tennessee as Instrument Number 04187358 (the "Waverly Assignment of Rents");

   vi. that certain First Amendment to Loan Agreement dated January 31, 2007, executed by Waverly (the "Amended Waverly Loan Agreement");

   vii. that certain Loan Agreement dated January 31, 2007, evidencing a loan in the aggregate amount of $2,383,000.00 extended by First Tennessee to Kirby Oaks (the "Kirby Oaks Loan Agreement");

   viii. that certain Amended and Restated Promissory Note in the original principal amount of $1,735,237.81 dated January 31, 2007, executed by Kirby Oaks ("Kirby Oaks Note I");

M RSC 2076258 v2
2100000-B08841   07/06/2010

ix. that certain Promissory Note in the original principal amount of $647,762.19 dated January 31, 2007, executed by Kirby Oaks ("Kirby Oaks Note II");

x. that certain that certain Amended and Restated Tennessee Mortgage Deed of Trust With Security Agreement and Assignment of Rents and Leases dated January 31, 2007, of record in the Office of the Register of Deeds of Shelby County, Tennessee as Instrument Number 07020833 executed by Kirby Oaks (the "Kirby Oaks Deed of Trust and Security Agreement");

xi. that certain Assignment of Rents and Leases dated January 31, 2007, executed by Kirby Oaks of record in the Office of the Register of Deeds of Shelby County, Tennessee as Instrument Number 07020834 (the "Kirby Oaks Assignment of Rents");

xii. that certain Assignment of Note and Deed of Trust assigned by TC 14 Grantor Trust to First Tennessee dated March 7, 2006, wherein First Tennessee is the beneficial holder of all of the rights, title, and interest in certain real and personal property as defined in that certain Deed of Trust of record in the Office of the Register of Deeds of Shelby County, Tennessee as Instrument Number 03146223.  Said Assignment of Deed of Trust is of record in the Office of the Register of Deeds of Shelby County, Tennessee as Instrument Number 07020831 (the "Assignment of Deed of Trust");

xiii. that certain Promissory Note in the original principal amount of $20,000.00 April 16, 2008, executed by Waverly and Kirby Oaks (the "Joint Note").

xiv. each as may have been amended, supplemented, or otherwise modified prior to the Petition Date and all collateral and ancillary documents executed in connection therewith (Collectively, the "First Tennessee Pre-Petition Loan Documents").

9. First Tennessee asserts that the Debtors are indebted to First Tennessee as of the Petition Date in an amount of $8,494,044.22 consisting of principal and interest in the amount of $8,471,388.71, $22,655.71 in fees and expenses, plus additional attorneys' fees, costs and expenses, and interest that continue to accrue as provided in the First Tennessee Pre-Petition Loan Documents.

10. Specifically, First Tennessee asserts that Waverly is indebted to First Tennessee under the Waverly Note I, Waverly Note II, and the Joint Note in aggregate amount of $5,925,228.21.

M RSC 2076258 v2
2100000-B08841   07/06/2010

Kirby Oaks is indebted to First Tennessee under the Kirby Oaks Note I, Kirby Oaks Note II, and the Joint Note in the aggregate amount of $2,566,714.59. First Tennessee asserts that both Waverly and Kirby Oaks owe no less than $22,655.71 in fees and expenses incurred, plus additional attorneys' fees, costs and expenses, and interest that continue to accrue as provided in the First Tennessee Pre-Petition Loan Documents.

11. To secure any and all indebtedness owed to First Tennessee by the Debtors, the Debtors executed the above referenced security agreements, assignments, and other security documents wherein, the Debtors conveyed to First Tennessee a security interest in the real property, fixtures, and other assets of the Debtors. First Tennessee holds a lien in all rents, issues, profits, revenues, income, accounts, accounts receivable, contract rights, and general intangibles, any and all products and proceeds, as well as all fixtures, furnishings, furniture, machinery, equipment, appliances, and personal property of every kind and nature whatsoever now owned hereafter owned by the Debtors.

12. Pursuant to the above referenced First Tennessee Pre-Petition Loan Documents, the Debtors granted security interests in and liens on, *inter alia*, all accounts, securities, deposit accounts, security deposits, accounts receivable, instruments, documents, chattel paper, bank deposits, proceeds, general intangibles, and rights to payment of every kind whether any of the foregoing is owned now or acquired later (and as may be further defined in the First Tennessee Pre-Petition Loan Documents, "Cash Collateral").

13. First Tennessee perfected its security interest in the Cash Collateral by filing and recording, among other documents, UCC-1 financing statements in the name of the Debtors (the "Financing Statements") and the various security agreements referenced herein. The security interests granted pursuant to the First Tennessee Pre-Petition Loan Documents were perfected by

- 7 -

the filing of Financing Statement(s) of record with the Delaware Department of State (Kirby Oaks) and the Illinois Office of the Secretary of State (Waverly). The UCC -1 financing statement related to First Tennessee Pre-Petition Loan Documents are of record as instrument number 2007 0456219 (Delaware) and instrument number 09253858 (Illinois).

14. The Debtors stipulate and agree that First Tennessee properly holds a perfected security interest in the Debtor's cash collateral as defined in 11 U.S.C. § 363(a). All such cash collateral are referred to herein as "Cash Collateral."

15. The Debtors have requested use of First Tennessee's' Cash Collateral and that it continue to obtain post-petition financing from First Tennessee through the use and consumption of Cash Collateral in order to continue the operation of the Facilities as debtors-in-possession under Chapter 11 of the Bankruptcy Code, to minimize the disruption of the Debtors as going concerns, to provide for the care, support and maintenance of the residents of the Facilities and to prevent immediate and irreparable harm to the estate pending confirmation of a Chapter 11 Plan.

16. Accordingly, good cause has been presented for the entry of this Order. The permission granted herein to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. Entry of this Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the Debtors to maintain operations and the use of Cash Collateral is necessary to sustain the Debtors' business operations and enhance the Debtors' prospects for a successful completion of its Chapter 11 case.

17. First Tennessee has agreed to the Debtors' use of Cash Collateral, subject to the terms and conditions of this Order. The extension by First Tennessee of new credit in such form is essential to the Debtors, and the Debtors are unable to make more favorable arrangements for

M RSC 2076258 v2
2100000-B08841    07/06/2010

such new credit than under the terms and conditions as set forth herein. The Debtors have an immediate need to use First Tennessee's Cash Collateral.

18. First Tennessee maintains that as a condition of the Debtors' use and consumption of Cash Collateral, and as protection from the consequences of the imposition of the automatic stay, it is entitled to, adequate protection pursuant to §§ 361 and 363(e) of the Bankruptcy Code. The Debtors have acknowledged that, without adequate protection, its use and consumption of Cash Collateral will result in a diminution of the interests of First Tennessee therein.

19. The Debtors seek this Court's approval for the purpose of providing for the continuation of the Debtors' post-petition financing from First Tennessee by the consensual use and consumption of Cash Collateral in which First Tennessee has an interest and for adequate protection of the interests of First Tennessee in all Cash Collateral.

20. The Debtors do not own any assets or property of material value other than the assets and property which are already subject to the lien and security interest granted in favor of First Tennessee.

21. After considering all alternatives, the Debtors concluded, in the exercise of its best and reasonable business judgment, that the financing provided by First Tennessee under the terms of this Order and to be provided by First Tennessee under the terms of this Order represent the best financing available to the Debtors.

22. First Tennessee is willing to continue to provide credit to the Debtors through the Debtors' limited use and consumption of Cash Collateral only on the terms and conditions and with the specific adequate protection and other relief provided herein, and First Tennessee is relying on such terms, conditions and protections in agreeing to the continued use and consumption of its Cash Collateral by the Debtors.

M RSC 2076258 v2
2100000-B08841    07/06/2010

23. Good cause has been shown for the entry of this Order.  First Tennessee is consenting to the Debtors continued use of Cash Collateral in good faith and agreeing to this Order in good faith.

24. Entry of this Order shall <u>not</u> constitute: (a) a finding of complete adequate protection of the interests of First Tennessee in the collateral securing the indebtedness, including Cash Collateral; (b) a preclusion or a waiver of any right of the Debtors or First Tennessee to file a motion for relief from the automatic stay, a motion to dismiss, a motion for the appointment of an examiner or a Trustee, or any other motion or request for relief, including but not limited to any adversary proceeding; (c) agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Order; and (d) a preclusion or waiver by the Debtors to assert that First Tennessee is adequately protected by an equity cushion in the collateral and (e) a preclusion or waiver to assert any other rights, remedies or defenses available to First Tennessee, or to respond to any motion, application, proposal or other action, as all such rights, remedies, defenses, and opportunities to respond are specifically reserved by First Tennessee.

25. Nothing herein shall be in prejudice of the rights of the Debtors or First Tennessee to seek modification or termination of this Order based upon a change of circumstances.

26. Nothing herein shall prejudice First Tennessee's right to challenge any aspect of this Bankruptcy Case or to seek relief under Title 11 or Title 28 with respect to any aspect of this Bankruptcy Case.

IT IS HEREBY ORDERED THAT:

A. The background statements and recitals in paragraphs (1) through (26) of this Order are true, correct and hereby incorporated by reference.

- 10 -

B. All findings of fact that are or may be deemed conclusions of law are hereby incorporated as conclusions of law.

C. Proper notice and opportunity for a hearing were provided.

D. Based on existing evidence and statements by the Debtor, the Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in Chapter 11 without use of the Cash Collateral.

E. The Debtors acknowledge and agree that First Tennessee's security interest in the Cash Collateral is duly perfected and constitutes a valid secured claim within the meaning of 11 U.S.C. § 506(a), to the full extent of the value of the Debtors' interest in the Cash Collateral.

F. Nothing contained in the Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantors to First Tennessee with respect to monies owed by the Debtors to First Tennessee.

G. Due to the various events of default in the Cash Collateral Orders, the Debtors agree to provide specific adequate protection to First Tennessee in the form of employing a new, qualified professional to operate and manage the Facilities commencing on July 1, 2010 until October 31, 2010 (the "Cash Collateral Period").

H. As adequate protection to be provided to First Tennessee, the Debtors agree to retain and employ Expansion Management Services, Inc. ("Expansion") as a professional of the bankruptcy estate specifically employed to manage and operate the Facilities. Debtors have filed an Application to Employ Expansion as a professional of the bankruptcy estate, and the employment of Expansion shall be effective *nunc pro tunc* effective upon July 1, 2010.

I. Upon entry of this order and upon the *nunc pro tunc* approval of the employment of Expansion as a professional of the bankruptcy estate which shall be effective upon July 1, 2010,

Mr. Brad Marksby of Expansion shall be the chief operations officer charged and responsible for the operation and management of the Facilities. Mr. Marksby has experience operating facilities similar to the Facilities of the Debtor.

J. The compensation paid to Expansion during the Cash Collateral Period shall be equal to the greater of $13,000.00 or five percent (5.00 %) of the monthly revenues of the Facilities for services rendered which includes the preparation of the monthly operating reports. Joe Kennedy, Integra Services Management, LLC, Provision Management, LLC, and Carl Murchland shall receive no compensation from the bankruptcy estate upon entry of the instant order, provided, however, that Provision Management, LLC shall be entitled to compensation and reimbursement of expenses which have accrued prior to July 1, 2010.

K. As additional adequate protection in connection with the use of Cash Collateral and any other property upon which security interests and liens have been previously granted by the Debtors to First Tennessee, the Court hereby confirms the grant, assignment and pledge by the Debtors to First Tennessee of a post-petition security interest and lien (of the same validity, extent and priority as First Tennessee' Pre-Petition security interests in the First Tennessee Pre-petition Collateral) in and to (a) all proceeds from the disposition of any of the Cash Collateral, and (b) any and all of its goods, property, assets and interests in property now existing and/or owned and hereafter arising and/or acquired and wherever located by the Debtors, including all property of the Debtor's estate as defined in 11 U.S.C. § 541, and all property acquired by the Debtors after the Petition Date and proceeds thereof (the "<u>Postpetition Collateral</u>" which, together with the "<u>First Tennessee Prepetition Collateral</u>" constitutes "<u>Collateral</u>").

L. The security interests and liens granted hereby shall be valid, perfected and enforceable security interests and liens on the property of the Debtors' estate without further filing or

M RSC 2076258 v2
2100000-B08841    07/06/2010

recording of any document or instrument or any other actions.  Nothing in this Order shall be construed as an improvement of value of First Tennessee's security or security interest as of the date of the filing of the petition.

    M. The Debtors shall <u>not</u> be permitted to pay administrative expenses allowed by this Court that are payable under §§ 330 and 331 of the Bankruptcy Code, as the same may be due and payable to the Debtors' professionals (other than the compensation to be paid to Expansion as provided herein), unless First Tennessee approves the same in writing.  Cash Collateral shall not be used for professional fees incurred for any litigation or threatened litigation against First Tennessee or for the purpose of challenging the amount, validity, extent or priority of any claim, lien or security interest held or asserted by First Tennessee or asserting any defense, claim, counterclaim or offset with respect to the pre-petition debt or the security interests or liens held or asserted by First Tennessee in the Collateral; provided however, that nothing in this order shall prohibit use of Cash Collateral for purposes of any litigation relating to the determination of adequate protection of Cash Collateral or relating to confirmation of a plan of reorganization. The Debtors hereby waive any claim for costs or expenses of administration of the Debtor's bankruptcy case or any future proceeding or case which may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, to be charged against the Collateral, pursuant to 11 U.S.C. § 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of First Tennessee and no such consent shall be implied from any action, inaction or acquiescence by First Tennessee.

    N. As additional adequate protection for First Tennessee, the Collateral shall be maintained and appropriately insured, with appropriate endorsements on all certificates of insurance naming First Tennessee as loss payee.

O.  As additional adequate protection for First Tennessee, First Tennessee is hereby granted an allowed superpriority administrative claim pursuant to 11 U.S.C. § 507(b) to the extent the terms of the Order prove insufficient to adequately protect the interest of First Tennessee for use of Cash Collateral.

P.  As additional adequate protection for First Tennessee, the following information shall be provided to First Tennessee:

  (a)  a monthly reconciliation of (i) the disbursements, expenses, and costs certified by an officer of Expansion;

  (b)  a monthly report of all receivables as of the monthly accounting period ending on the preceding last day of the previous, certified by an officer of Expansion;

  (c)  Immediately upon filing with the Court, copies of any monthly reports, status reports, or financial information of any kind or nature;

  (d)  By the 30th day of the month for the immediately preceding month:

   (i)   Census analysis for each Facility;

   (ii)  Balance sheet for the Debtors on a combined basis;

   (iii) Balance sheet for each Facility;

   (iv)  Debtor's Chapter 11 monthly operating reports;

   (v)   List of aged (30 days, 60 days, 90 days, 120 days, 120+ days) receivables from private parties or any other source, listed by Facility;

   (vi)  Reconciled bank statements;

   (vii) Statement of cash on hand, including all accounts;

   (viii) Statement and listing of any necessary and anticipated capital expenditures which exceed an amount of $1,500.00;

  (ix) If specifically requested, all documents required to be produced to First Tennessee under the terms of the Loan Documents; and

  (x) Any and all other documents reasonably requested by First Tennessee.

Q. Upon the receipt of any notice or correspondence from any state regulatory agency or civil authority, First Tennessee shall be provided a copy of the same as well as any response thereto submitted by or on behalf of the Debtors.

R. During the Cash Collateral Period, the Debtors may not use or consume any Cash Collateral, other than the Cash Collateral as allowed in this Order and to be used only in accordance with the operation of the Facilities.

S. The Debtors shall not, at any time during its bankruptcy case, grant mortgages, security interests, or liens in any of its assets or properties to other parties pursuant to § 364(d) of the Bankruptcy Code or otherwise

T. The Court's entry of this Order shall constitute authorization, ratification, and approval of the Order and any action taken or to be taken by the Debtors and/or First Tennessee in furtherance thereof and hereof.

U. No third parties (including creditors of the Debtors) are intended to be or shall be deemed to be third-party beneficiaries of the provisions of this Order.

V. First Tennessee shall not be deemed to be in control of the operations of the Debtors or be acting as a "responsible person" or "owner" or "operator" with respect to operations or management of the Debtors (as such terms, or any similar terms, as used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or in any other Federal or state statute).

M RSC 2076258 v2
2100000-B08841    07/06/2010

W. If any or all of the provisions of the Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any security interests, lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order. The validity and enforceability of all security interests, liens and priorities authorized or created hereby shall survive the conversion of the case to a case under Chapter 7 of the Bankruptcy Code and the dismissal of this case.

X. The provisions of the Order shall be binding upon and inure to the benefit of First Tennessee and the Debtors, and their respective successors and assigns.

Y. The terms and conditions set forth above are reasonable and appropriate, are in the best interests of the Debtors and the estate, and are consistent with and satisfy the requirements and provisions of §§ 361, 363(e) and 363(c)(2) of the Bankruptcy Code.

Z. The requirements of the Bankruptcy Rules, including without limitation Fed. R. Bankr. P. 4001(d), have been satisfied for the Debtor's consensual use and consumption of Cash Collateral and for the grant of adequate protection to First Tennessee on the Consent, limited basis set forth in this Order.

AA. This Court shall retain jurisdiction to resolve issues that arise pursuant to this Order.

BB. Time is of the essence with respect to all performance required by this Consent Order.

CC. This Order shall be effective as of the date of entry.

IT IS SO ORDERED

SUBMITTED FOR ENTRY:

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

M RSC 2076258 v2
2100000-B08841    07/06/2010

/s/ R. Spencer Clift, III
_____
R. Spencer Clift, III (TNB # 020445)
Michael C. Patton (TNB # 12206)
165 Madison Avenue
Suite 2000
Memphis, Tennessee 38103
(901) 577-2216 - Telephone
(901) 577-0834 – Telecopier
Email: sclift@bakerdonelson.com

***Attorneys for First Tennessee Bank National Association***

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC

/s/ Michael P. Coury
_____
Michael P. Coury

6075 Poplar Avenue,
Suite 500
Memphis, TN 38119
Telephone: (901) 680-7348
Fax: (901) 680-7201
Email: Mike.Coury@butlersnow.com

***Attorney for the Debtors***


/s/ Karen P. Dennis
_____
Karen P. Dennis
Trial Attorney
U.S. Trustee's Office
Office of the U.S. Trustee for Region 8
200 Jefferson Avenue, Suite 400
Memphis, TN 38103
Email: Karen.P.Dennis@usdoj.gov

***Trial Attorney for United States Trustee's Office***

Please serve the following

All Creditors

M RSC 2076258 v2
2100000-B08841   07/06/2010