**Dated: May 09, 2011**
**The following is SO ORDERED:**

_____
Paulette J. Delk
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WAVERLY GARDENS OF | ) | Case No. 08-30218-PJD |
| MEMPHIS, LLC | ) | Case No. 08-30221-PJD |
| KIRBY OAKS INTEGRA, LLC | ) | Chapter 11 |
| d/b/a WAVERLY GLEN | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | |

**ORDER GRANTING SECOND EMERGENCY JOINT MOTION FOR PRELIMINARY AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON A SECURED BASIS PURSUANT TO 11 U.S.C. §§ 105, 361, 364(c)(1), 364(c)(2), 364(c)(3), AND 364(d)(1)**

This matter came before the Court on April 29, 2011, at 9:00 A.M. on the Second Emergency Joint Motion for Order Authorizing Debtor to Obtain Post-Petition Financing on a Secured Basis Pursuant to 11 U.S.C. §§ 105, 361, 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) (the "Motion") [Dkt. Entry # 267] filed by First Tennessee Bank National Association ("First Tennessee"), Waverly Gardens of Memphis, LLC ("Waverly") and Kirby Oaks Integra, LLC,

1

(Kirby Oaks,") (collectively, Kirby Oaks and Waverly are referred to herein as the "Debtors" and together with First Tennessee and Debtors, collectively, the "Movants"). The Movants seek interim approval for post-petition financing from First Tennessee in the form of a revolving line of credit promissory note in the original principal amount of Seventy Five Thousand and 00/100 Dollars ($75,000.00) (the "DIP Loan"). Objections to the Motion were filed by the Shelby County Trustee [Dkt Entry #: 270] and Contractors, Inc. [Dkt Entry #: 277].

Upon due and proper consideration thereof, and having considered the statements of counsel and evidence presented at the Preliminary Hearing and the applicable law, and it appearing that the relief requested in the Motion is in the best interests of Debtors, their estates and creditors, and that such relief is essential for the continued operations of Debtors' businesses; and it further appearing that Debtors have been unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code or other secured financing on terms equal to or more favorable than those set forth in the First Tennessee's DIP Loan Documents (as defined herein), and upon the record herein; and after due deliberation thereon; and sufficient cause appearing therefore, **IT IS HEREBY ORDERED THAT:**[1]

## JURISDICTION

1.     On October 2, 2008 (the "Petition Date"), Debtors filed Voluntary Petitions under Chapter 11 of the Title 11 United States Code (the "Bankruptcy Code"). The Debtors operate two (2) senior living facilities consisting of a total of 248 units. The facility known as "Waverly Gardens" consists of 196 rental units and is located at 6539 Knight Arnold Road, Memphis,

---

[1] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Federal Rules of Bankruptcy Procedure 7052.

2

Tennessee 38115. The facility known as "Waverly Glen" consists of 52 rental units and is located 6551 Knight Arnold Road, Memphis, Tennessee 38115 (collectively, Waverly Gardens and Waverly Glen are referred to herein as the "Facilities"). Waverly owns Waverly Gardens. Kirby Oaks owns Waverly Glen. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, Debtors are continuing to operate their business and manage their properties and assets as debtors in possession, as no Trustee or examiner has been appointed in this case.

2. Pursuant to an Order Granting Joint Administration Pursuant to Rule 1015 [Docket No. 29], *In re Waverly Gardens of Memphis, LLC*- Case Number 08-30218 and *In re Kirby Oaks Integra, LLC* -Case Number 08-30221 are jointly administered under the instant case number.

3. Movants bring this motion (the "Motion") pursuant to 11 U.S.C. §§ 105, 361, 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. Under Bankruptcy Rule 4001(c)(2), the Court may commence a final hearing on a motion for authority to obtain credit no earlier than fifteen (15) days after service of the motion and notice of hearing on the motion. Bankruptcy Rule 4001(c)(2) further provides, however, that the Court may conduct a preliminary hearing before the expiration of the 15-day notice period as necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. Movants respectfully request the Court to conduct a preliminary hearing at the Court's earliest convenience to authorize the secured post-petition financing as necessary to avoid immediate and

M RSC 2230416 v1
2100000-B08841    05/04/2011

irreparable harm to Debtors' bankruptcy estates pending a final hearing.

5.  Debtors entered into a pre-petition loan with First Tennessee (the "First Tennessee Pre-Petition Loan"), as evidenced by those certain loan documents as defined, identified, and disclosed (collectively, the "First Tennessee Pre-Petition Loan Documents") in the orders entered in this Court relating to Debtors' use of First Tennessee' Cash Collateral (referred to and incorporated herein as, collectively, the "Cash Collateral Order") [Docket Nos. 92, 112, 131, 153 212 & 258].  First Tennessee has consented to Debtors' use of the Cash Collateral in accordance with the protection and other relief provided for in the Cash Collateral Order.

6.  Movants have consented to extension of the use of Cash Collateral pending sale of the assets of the Debtors, stay relief, or dismissal of the case.

7.  On or about July 9, 2010, and pursuant to a prior cash collateral order entered in the case, Expansion Management Services, LLC ("Expansion") was charged with and retained to be responsible for overseeing the management and operation of the Facilities.  Due to short term capital needs for specific items and minor repairs that need to be made at the Facilities to benefit the residents, another infusion of cash is necessary.

8.  The financing provided by First Tennessee is intended to equip the Debtors to operate as going concerns, improve the Facilities in specific areas identified by Expansion that need to be addressed, bolster the Debtors' ability to provide for the care, support, and maintenance of the residents of the Facilities, and avoid immediate and irreparable harm to Debtors' bankruptcy estates.  Accordingly, First Tennessee has agreed to loan new money to Debtors, but only on the terms and conditions set forth herein.

9. After substantial negotiations and an emergency request for funding, Debtors and First Tennessee have agreed to enter into another Loan Agreement (the "First Tennessee DIP Loan Agreement"), whereby First Tennessee will make a new loan to Debtors, in the amount of Seventy Five Thousand and 00/100 Dollars ($75,000.00), for Debtors' use at the Facilities pursuant to the terms and requirements of the Cash Collateral Order.

10. The First Tennessee DIP Loan shall be in the amount of Seventy Five Thousand and 00/100 Dollars ($75,000.00), with interest at a fixed rate of 5% per annum and maturing on the sale of the Facilities.

11. The First Tennessee DIP Loan proceeds shall be used by Debtors in accordance with the budget and the specific list and request of cash needs submitted and prepared by Expansion as generally outlined above.

12. The First Tennessee DIP Loan shall be secured by a lien on all property of each of Debtor's estates of any and every nature, characterization or description whatsoever, including without limitation, all Facilities, accounts, healthcare insurance receivables, rights under governmental health care costs reimbursement contracts and general (including payment) intangibles of the bankruptcy estates, but not including any recovery actions of any of the Debtors' estates under Chapter 5 of the Bankruptcy Code.

13. Debtors are unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. Debtors and First Tennessee negotiated the First Tennessee DIP Loan Agreement in good faith and at arms-length. The First Tennessee DIP Loan Agreement represents Debtors' best opportunity under the circumstances to obtain emergency post-petition financing necessary to fund Debtors' operations in Chapter 11 to ensure

M RSC 2230416 v1
2100000-B08841    05/04/2011

that Debtors' value as a going concern is preserved.  The First Tennessee DIP Loan Agreement results from the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitutes a transaction for reasonably equivalent and fair consideration.

14. Moreover, Debtors believe that financing is not available from other sources on equally favorable terms.  The First Tennessee DIP Loan Agreement is the most efficient, least expensive mechanism available to meet Debtors' immediate short term needs.  Accordingly, Debtors aver that the First Tennessee DIP Loan Agreement is Debtors' best source of post-petition financing, is fair and reasonable, is in the best interests of Debtors, Debtors' estates, and Debtors' creditors, and that Debtors' entry into the First Tennessee DIP Loan Agreement reflects a sound exercise of Debtors' business judgment.

15. Without immediate authority to obtain financing on the terms and conditions set forth in the DIP Loan Agreement, Debtors will be unable to meet its ongoing costs and expenses of operation, which would cause immediate and irreparable harm to Debtors' bankruptcy estates.

16. The Court hereby authorizes Debtors to obtain credit pursuant to the First Tennessee DIP Loan Agreement as necessary to avoid immediate and irreparable harm.

17. The Court hereby further authorizes Expansion, for and on behalf of the Debtors as a special professional of the bankruptcy estate of the Debtors, (i) to execute and deliver all instruments, agreements, assignments and other documents referred to therein or requested by First Tennessee to give effect to the terms of the First Tennessee DIP Loan Agreement (the "DIP Financing Documents"); (ii) to obtain the First Tennessee DIP Loan and to incur any and all liabilities and obligations thereunder; (iii) to pay all interest, fees and expenses provided for thereunder; and (iv) to perform the obligations hereunder in accordance with the terms hereof.

6

Debtors will obtain the First Tennessee DIP Loan under the terms of the DIP Financing Documents. First Tennessee shall not be required to file any UCC-1 financing statements or any other document or take any other action (including possession of any of the First Tennessee DIP Collateral) in order to validate or perfect the security interests and liens granted to it hereunder or under any DIP Financing Documents, as all such liens and security interests shall be deemed automatically perfected by and upon entry of and this Order.

18. The First Tennessee DIP Loan and this extension of credit in the amount of $75,000.00 made by First Tennessee to Debtors under the instant DIP Financing Documents, together with all interest, fees and charges (collectively, the "$75,000.00 First Tennessee Post-Petition Debt"), pursuant to Section 364(c)(1) of the Bankruptcy Code, shall constitute an allowed secured claim against Debtors' estates with the same and similar priority of the existing administrative expenses against Debtors.

19. Except as provided in the First Tennessee Cash Collateral Order(s), no costs or administrative expenses which have been or may be incurred in this Chapter 11 case, in any proceedings related hereto or in any superseding Chapter 7 case and no priority claims are or will be prior to the claims of First Tennessee against Debtors on account of the First Tennessee Post-Petition Debt. Without limiting the generality of the foregoing in no event shall any costs or expenses of administration be imposed upon First Tennessee or any of the First Tennessee DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of First Tennessee and no such consent shall be implied from any action, inaction or acquiescence by any of them.

20. Nothing contained in this Order shall be construed to require First Tennessee to make any First Tennessee DIP Loans to Debtors, and any and all First Tennessee DIP Loans that First Tennessee shall make or procure shall be in such amounts and made at such times as First Tennessee may determine pursuant to the DIP Financing Documents. First Tennessee may, in its discretion, terminate the DIP Financing Documents at any time in accordance with the terms thereof.

21. This Order or the First Tennessee DIP Loan Documents do not entitle Debtors to financing beyond the Maturity Date (as defined in the First Tennessee DIP Loan Documents) and nothing in this Order or the First Tennessee DIP Loan Documents shall be construed as creating or permitting a revolving or open-ended credit facility.

22. First Tennessee shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the First Tennessee DIP Collateral, to the extent that the protection afforded by any order of this Court regarding First Tennessee' interests in any First Tennessee DIP Collateral proves to be inadequate.

23. The First Tennessee DIP Loan Documents and the provisions of this Order shall be binding upon First Tennessee, Debtors and their respective successors and assigns, and shall inure to the benefit of First Tennessee and Debtors and their respective successors and assigns including, without limitation, any trustee, responsible officer, examiner with expanded powers, estate administrator or representative, or similar person appointed in a case for Debtors under any chapter of the Bankruptcy Code.

M RSC 2230416 v1
2100000-B08841    05/04/2011

24. Except with respect to First Tennessee, its delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

25. This Order shall not be construed in any way as a waiver or relinquishment of any rights that First Tennessee may have to bring or be heard on any matter brought before this Court.

26. Except as expressly provided herein, nothing in this Order is intended to modify, waive or change any of the terms and conditions set forth in the First Tennessee Cash Collateral Order(s). Furthermore, nothing in this Order shall affect the nature (i.e., prepetition vs. postpetition), validity, priority or extent of First Tennessee' collateral for any of the Debtors' prepetition indebtedness owed to First Tennessee. Any lien or security interest granted to First Tennessee herein shall apply to and secure only the First Tennessee DIP Loan.

27. The notice given by Movants of the Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.

28. This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Order on the Court's docket in this Chapter 11 Case.

29. A final hearing on the Motion shall be held on Tuesday, May 24, 2011, at 11:00 a.m., at the United States Bankruptcy Court in Memphis, Tennessee. Additional Objections to the Motion or the terms of this Order shall be filed with the Clerk of Court on or prior to the final hearing. If a written objection or other response is timely filed and served in accordance with the above, the Court will consider such objection at the final hearing. The final hearing may be

adjourned by announcement in open court at the final hearing or any subsequently scheduled final hearing. If no written objection or other response is timely filed and served in accordance with the above, the instant order shall constitute the final order granting the relief requested in the Motion and granted in this Order effective upon entry of this Order.

**IT IS SO ORDERED**

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC

/s/ Michael P. Coury

---

Michael P. Coury
6075 Poplar Avenue,
Suite 500
Memphis, TN 38119
Telephone: (901) 680-7348
Fax: (901) 680-7201
Email: Mike.Coury@butlersnow.com

*Attorney for the Debtors*

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

/s/ R. Spencer Clift, III

---

R. Spencer Clift, III MS. Bar No. 020445
165 Madison Avenue • Suite 2000
Memphis, Tennessee  38103
Telephone:  (901) 577.2216
Fax:  (901) 577.0834
Email: sclift@bakerdonelson.com

*Attorney for First Tennessee Bank*

/s/ Elijah Noel, Jr.
_____
Elijah Noel, Jr. (BPR # 8655)
160 N. Main St., 2nd Floor
Memphis, TN 38103
Telephone: (901) 545-3084

*Shelby County Delinquent Tax Attorney*


ADAMS AND REESE LLP

By: /s/ Henry C. Shelton, III
_____
Henry C. Shelton, III (#8207)
Brinkley Plaza
80 Monroe Avenue, Suite 700
Memphis, Tennessee 38103
Telephone: (901) 524-5271
Facsimile: (901) 524-5419

*Attorney for Contractors, Inc.*


/s/ Karen P. Dennis
_____
Karen P. Dennis
Trial Attorney
U.S. Trustee's Office
Office of the U.S. Trustee for Region 8
200 Jefferson Avenue, Suite 400
Memphis, TN 38103
Email: Karen.P.Dennis@usdoj.gov


*Trial Attorney for United States Trustee's Office*


<u>Please serve the following</u>

All Creditors

Memphis 2080933v1

11

M RSC 2230416 v1
2100000-B08841    05/04/2011